UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| BRANDI N. H., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br> Case No. 2:21-cv-00132 <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff Brandi H.[1] filed this action asking the court to reverse and remand the decision of the Acting Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act.[2][3] The Administrative Law Judge ("ALJ") found Ms. H. did not qualify as disabled.[4] The court[5] has carefully reviewed the record and the parties' briefs.[6] Where the ALJ legally erred by omitting

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including Social Security cases, the court refers to Plaintiff by her first name and last initial only.

[2] 42 U.S.C. §§ 401–434.

[3] (Opening Br. 1, 10, Doc. No. 21.)

[4] (Certified Tr. of Admin. R. ("Tr.") 15–24, Doc. No. 15.)

[5] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 10.)

[6] This appeal is determined on the basis of the written memoranda, as oral argument is unnecessary. *See* DUCivR 7-1(g).

1

all discussion of Ms. H.'s headaches from his RFC analysis, it is impossible to tell whether he adequately considered her migraine disorder. For this reason, the Commissioner's decision is reversed and remanded.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides for judicial review of a final decision of the Commissioner. This court reviews the ALJ's decision and the record as a whole to determine whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards.[7] "[A]n ALJ's factual findings . . . shall be conclusive if supported by substantial evidence."[8] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[9] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[11] And the court may not substitute its judgment for that of the ALJ or reweigh evidence.[12]

---

[7] 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (finding the ALJ must provide a sufficient statement of the case and discussion of the evidence to enable the court to assess the conclusions reached); *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) ("[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence.").

[8] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted).

[9] *Id.* at 1154 (internal quotation marks omitted).

[10] *Id.* (internal quotation marks omitted).

[11] *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

[12] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

APPLICABLE LAW

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[13] An individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[14]

In making a disability determination, the ALJ follows a five-step sequential process, considering whether:

1) The claimant is engaged in substantial gainful activity;

2) The claimant has a severe, medically determinable, physical or mental impairment;

3) The impairment is equivalent to one of the impairments which preclude substantial gainful activity, listed in the appendix of the relevant disability regulation;

4) The claimant has a residual functional capacity to perform past relevant work; and

5) The claimant has a residual functional capacity to perform other work in the national economy considering his/her/their age, education, and work experience.[15]

---

[13] 42 U.S.C. § 423(d)(1)(A).

[14] *Id.* § 423(d)(2)(A).

[15] *See* 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

The claimant has the burden of establishing disability in the first four steps.[16] At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy.[17]

## PROCEDURAL HISTORY

Ms. H. applied for disability insurance benefits in June 2018, alleging disability beginning November 1, 2017.[18] After an administrative hearing on Ms. H.'s claims,[19] the ALJ issued a decision finding Ms. H. not disabled and denying benefits.[20]

At step two of the sequential evaluation, the ALJ determined Ms. H. had the severe impairments of recurrent anemia, degenerative disc disease of the lumbar and cervical spine, obesity, and depressive order.[21] The ALJ found Ms. H. had the nonsevere impairments of migraine headaches and left shoulder tendonitis.[22] At step three, the ALJ found Ms. H.'s impairments did not meet or equal the severity of an impairment listing.[23] Ultimately, the ALJ

---

[16] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[17] *Id.*

[18] (Tr. 15.)

[19] (*See id.* at 30–66.)

[20] (*See id.* at 15–24.)

[21] (*Id.* at 18.)

[22] (*Id.*)

[23] (*Id.* at 18–19.)

determined Ms. H. had the residual functional capacity ("RFC")[24] to perform sedentary work with the following limitations:

> [S]he can only occasionally perform postural movements and activities, such as balancing, stooping, kneeling, crouching, and crawling; she can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; she can occasionally reach overhead with her left (non-dominant) upper extremity; she can frequently handle and finger bilaterally; and she can understand, remember, and carry out only short and simple instructions.[25]

With these restrictions, the ALJ found Ms. H. unable to perform any of her past, relevant work.[26] However, relying on the testimony of a vocational expert, the ALJ concluded jobs existed in significant numbers in the national economy which Ms. H. could perform.[27]

The Appeals Council denied Ms. H.'s request for review, making the ALJ's decision the final decision of the Commissioner.[28]

## DISCUSSION

Ms. H.'s claims of error relate to the ALJ's evaluation of her migraine disorder. She argues the ALJ erred by failing: (1) to find her headaches constituted a severe impairment at step two, and (2) to adequately account for her headaches in subsequent steps, including the RFC finding.[29] The ALJ's decision must be reversed because he omitted all discussion of Ms. H.'s

---

[24] An individual's RFC is the most the individual can do considering his/her/their limitations. 20 C.F.R. § 404.1545(a)(1).

[25] (Tr. 19.)

[26] (*Id.* at 23.)

[27] (*Id.* at 23–24.)

[28] (*See id.* at 1–3.)

[29] (Opening Br. 5–9, Doc. No. 21.)

5

headaches after recognizing them as a medically determinable impairment at step two. Where the decision is reversed on these grounds, Ms. H.'s first claim of error is not addressed.

"In his RFC assessment, the ALJ must consider the combined effect of all medically determinable impairments, whether severe or not."[30] A finding that a claimant's impairments are nonsevere at step two "does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five."[31] "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."[32] In addition, it "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."[33]

In this case, as Ms. H. points out, the ALJ made no mention of migraines, headaches, or related symptoms subsequent to step two. At step two, the ALJ considered Ms. H.'s migraine headache disorder but found it nonsevere, concluding Ms. H.'s migraines had no more than a minimal impact on her ability to work.[34] But even in this step-two finding, the ALJ discussed no evidence related to Ms. H.'s migraines. He concluded only that "[t]he frequency and intensity of her headaches are not medically documented, and the evidence does not support a finding that

---

[30] *Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013) (emphasis omitted) (citing 20 C.F.R. § 404.1545(a)(2)).

[31] *Id.* at 1068–69.

[32] *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (internal quotation marks omitted).

[33] Soc. Sec. Ruling 96-8p, 1996 SSR LEXIS 5, at *20.

[34] (*See* Tr. 18.)

they caused more than minimal functional limitations for a period of 12 consecutive months or longer."[35] This is the sole statement in the entirety of the ALJ's decision related to Ms. H.'s migraines.

In her answer brief, the Commissioner details the evidence related to Ms. H.'s headaches in great detail.[36] But the ALJ did not address any migraine or headache evidence in his decision. For instance, the record contains a report from June 2014 indicating Ms. H.'s migraines were accompanied by nausea, vomiting, light sensitivity, watery eyes, and double vision.[37] Ms. H.'s medical records consistently noted a history of migraines.[38] And in June 2019, Ms. H. reported suffering from sixteen to seventeen migraines per month.[39] Medical notes from this same visit also contain a recitation of medications and treatments Ms. H. tried for migraines over time.[40] In addition, Ms. H. testified she had suffered from migraines since she was seventeen years old, she still had migraines sixteen to twenty days per month, and she used to miss work two or three days per month due to migraines.[41] Ms. H.'s husband reported Ms. H.'s migraines required her to lie down.[42] The ALJ failed to discuss any of this evidence. He did not even explain the basis

---

[35] (*Id.*)

[36] (*See* Answer Br. 3–5, Doc. No. 27.)

[37] (Tr. 533.)

[38] (*See, e.g.*, *id.* at 274, 309, 312, 330, 339, 344, 351 377, 380, 384.)

[39] (*Id.* at 492.)

[40] (*Id.*)

[41] (*Id.* at 60.)

[42] (*Id.* at 191.)

7

for the one conclusion he reached: that the evidence did not support a finding the impairment was severe. The ALJ did not to cite to any record evidence in connection with this conclusion.

Most significantly, the ALJ entirely omitted any discussion of Ms. H.'s headache disorder from his RFC analysis. Indeed, it appears the ALJ merely relied on his findings at step two and did not consider Ms. H.'s migraines at subsequent steps. This constitutes reversible error.[43] A finding that an impairment is not severe does not automatically mean there are no resulting limitations.[44] Without any indication the ALJ considered Ms. H.'s headaches subsequent to step two, it is impossible to determine whether the RFC accounts for any headache-related limitations.

The Commissioner acknowledges the ALJ did not "explicitly cite [Ms. H.'s] headaches within the RFC analysis."[45] But she argues the ALJ's statement that he considered all Ms. H.'s medically determinable impairments when assessing her RFC is sufficient, because the court should take the ALJ at his word.[46] The problem is that not only did the ALJ fail to explicitly

---

[43] *See Weaver v. Colvin*, No. 15-cv-02523, 2017 U.S. Dist. LEXIS 20010, at *31 (D. Colo. Feb. 13, 2017) (unpublished) ("[T]he ALJ may not simply rely on his finding of non-severity as a substitute for a proper RFC analysis." (internal quotation marks omitted)); *see also Berg v. Berryhill*, No. 16-cv-02718, 2018 U.S. Dist. LEXIS 899, at *25–26 (D. Colo. Jan. 3, 2018) (unpublished) (finding reversible error where the ALJ failed to address migraine disorder in her RFC assessment after finding migraines to be a nonsevere medically determinable impairment at step two).

[44] *Cf. Mushero v. Astrue*, 384 F. App'x 693, 695–96 (10th Cir. 2010) (unpublished).

[45] (Answer Br. 12, Doc. No. 27.)

[46] (*Id.* (citing *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007).) The Commissioner cites *Amy L.T. v. Saul*, No. 2:18-cv-00152, 2019 U.S. Dist. LEXIS 154991 (D. Utah Sept. 9, 2019) (unpublished), and *Pennie v. Colvin*, No. 2:12-cv-00262, 2013 U.S. Dist. LEXIS 139883 (D. Utah Sept. 27, 2013) (unpublished), in support of the idea that an ALJ's statement that he considered all the evidence, alone, is a basis for affirming. But the *Amy L.T.* court only summarily addressed the issue. *See* 2019 U.S. Dist. LEXIS 154991, at *7–8. Neither the state of the record nor the extent to which the ALJ analyzed the impairments or explained his rationale is

address Ms. H.'s headaches in his RFC analysis, he failed to implicitly do so. He made no reference to relevant medical records, symptoms, or testimony. For the court to accept the contention that the ALJ considered Ms. H.'s headaches subsequent to step two, there must be some indication—any indication—the ALJ did so. In this case, there is none. Even at step two, the ALJ's mention of Ms. H.'s migraine disorder is so conclusory as to be inconsequential. Where the ALJ entirely failed to discuss in his RFC analysis an impairment which he found to be medically determinable, it is impossible to conclude he applied the correct legal standards or that his decision is supported by substantial evidence.

> This complete omission cannot be considered harmless error.[47]
>
> While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.[48]

In other words, it is not possible to simply look at the headache evidence (and lack of evidence) in the record to assess harmlessness. Any symptoms or impairments from the migraine disorder must be considered in combination with all others. It may well be that a consideration of the relevant evidence in the RFC analysis would lead to a finding that Ms. H. had no headache-

---

apparent from that opinion. And the *Pennie* decision is not on point. The *Pennie* court addressed an ALJ's failure to discuss a claimant's failed work attempt—not a medically determinable impairment the ALJ failed to consider subsequent to step two. *See* 2013 U.S. Dist. LEXIS 139883, at *14–15. For these reasons, neither case is persuasive here.

[47] *Cf. Walker v. Colvin*, No. 1:12-cv-00235, 2014 U.S. Dist. LEXIS 26261, at *31 (D. Utah Feb. 27, 2014) (unpublished) (remanding upon finding the ALJ erred in assessing the claimant's RFC "by failing to consider her migraines at this step" even if they were nonsevere).

[48] Soc. Sec. Ruling 96-8p, 1996 SSR LEXIS 5, at *14–15; *see also Mushero*, 384 F. App'x at 695–96.

related limitations. But the ALJ must undertake this analysis, as it is the ALJ (not the court) who must weigh the evidence.[49] Because the ALJ wholly failed to mention headaches in his RFC analysis—and failed to address any record evidence related to migraines—it is impossible for the court to effectively analyze his decision. Put differently, the ALJ's decision fails to "provide this court with a sufficient basis to determine that appropriate legal principals have been followed."[50] This is grounds for reversal.[51]

The court need not address Ms. H.'s remaining claim of error where the ALJ's decision is reversed on other grounds. On remand, the evidence should be reconsidered in whole.[52]

## CONCLUSION

The ALJ legally erred by entirely omitting any discussion of Ms. H.'s headache disorder after finding it to be a medically determinable impairment at step two. For this reason, the case is reversed and remanded for further consideration.

DATED this 28th day of September, 2022.

BY THE COURT:

*Daphne A. Oberg*
Daphne A. Oberg
United States Magistrate Judge

---

[49] *See Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) (noting post hoc rationalization would require the court to "overstep [its] institutional role and usurp essential functions committed in the first instance to the administrative process"); *cf. Langley*, 373 F.3d at 1118.

[50] *See Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

[51] *Id.*

[52] *Cf.* HALLEX I-2-8-18.